# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No.: _____

HI-TECH PHARMACEUTICALS, INC., a
Georgia corporation,

      Plaintiff,

v.

NUTRITION TRAINING SYSTEMS, LLC,
d/b/a MUSCLEOLOGY SPORTS NUTRITION,
a Florida limited liability company; and
MUSHTAQ HUSSAIN, an individual,

      Defendants.
_____/

## COMPLAINT

COMES NOW, the Plaintiff, Hi-Tech Pharmaceuticals, Inc. ("Hi-Tech" or "Plaintiff"), by and through the undersigned counsel of record, and for its Complaint against the Defendants, states as follows:

## THE PARTIES

1.    Plaintiff Hi-Tech is corporation organized and existing under the laws of the State of Georgia, with its principal place of business located at 6015-B Unity Drive, Norcross, Georgia 30071.  Hi-Tech manufactures dietary supplement products and sells, distributes, and markets its products in the State of Florida and throughout the United States.

2.     Defendant Nutrition Training Systems, LLC d/b/a Muscleology Sports Nutrition ("Muscleology") is a limited liability company organized under the laws of the State of Florida with a principal place of business at 3901 SW 47th Avenue, Suite 409, Davie, Florida 33314.  Upon information and belief, Muscleology manufactures dietary supplement products and sells, distributes, and markets its products, including the Nitro-Pro product at issue, in the State of Florida, in this District, and throughout the United States.

3.     Mushtaq Hussain ("Hussain") is an individual and citizen of Florida who can be served with process at 3901 SW 47th Avenue Suite 409, Davie, Florida 33314. Upon information and belief, Hussain is the chief executive officer, owner, and president of Muscleology.  Hussain is liable under the Lanham Act for torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent for the corporation and not on his own behalf.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C § 1331 (federal question), 15 U.S.C § 1121 (Lanham Act claims), 28 U.S.C. § 1338 (trademark and unfair competition claims), 28 U.S.C § 1367 (supplemental jurisdiction), and 28 U.S.C. § 1332 (diversity), as this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds seventy-five thousand dollars ($75,000.00).

5.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant Muscleology resides in this District, and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

6.     This action seeks redress for Defendants' deliberate and misleading representations regarding the whey protein and sodium content of Muscleology's Nitro-Pro product.

7.     This action further seeks redress for Defendants' deliberate and unlawful infringement of Hi-Tech's NitroPro® trademark and brand..

8.     This action also seeks redress for Defendant Muscleology and Defendant Hussain's conspiracy to conduct the affairs of Muscleology in violation of 18 U.S.C. § 1962(c).

## I.     HI-TECH   AND   ITS   NITROPRO®   WHEY   PROTEIN PRODUCT

9.     Hi-Tech is a producer of high quality dietary supplements, including NitroPro®, a whey protein-containing dietary supplement for consumers seeking to develop and/or preserve muscle mass and strength.

10.    Hi-Tech's NitroPro® product is similar to Muscleology's Nitro-Pro product in that both products are marketed as dietary supplement protein powders.

11.     NitroPro® directly competes against Muscleology's Nitro-Pro product in the dietary supplement marketplace.

12.     Hi-Tech distributes, markets and sells NitroPro® in the State of Florida and throughout the United States via an extensive network of wholesale, Internet, and retail outlets such as health food stores, gyms and fitness centers.

13.     Hi-Tech has expended substantial resources to develop, promote, brand, market, sell, and maintain the quality of its NitroPro® product.

14.     Hi-Tech markets and promotes its dietary supplements, including NitroPro®, through many types of advertising media including printed brochures and flyers, magazine advertisements, and distributors' catalogs. In addition, Hi-Tech's NitroPro® has been featured prominently in the trade publication entitled "Hi-Tech Health and Fitness," which was published quarterly for individuals and companies interested in the dietary supplement industry.  As a result, Hi-Tech's NitroPro® product and brand has established substantial and valuable goodwill among consumers of dietary supplements.

15.     A key element to Hi-Tech's advertising campaigns is the fact its NitroPro® product contains high quality whey proteins.

16.     Whey protein is known as a "whole" or "complete" protein source, meaning it contains all of the essential amino acids the human body needs to build protein-based compounds such as muscle tissue, skin, fingernails, hair, and enzymes.

*17.*    Whey protein powder is especially rich in branched-chain amino acids – leucine, isoleucine, and valine – which are metabolized directly into muscle tissue instead of being first processed by the liver.

18.    Although amino acids are the "building blocks" of protein, free form amino acids and non-protein amino acids do not provide the same health benefits of a complete or whole protein such as whey protein. There have been several studies that have shown that protein is absorbed more rapidly than amino acids. See e.g., *Di Pasquale MG. Amino Acids and Proteins for the Athlete: The Anabolic Edge, Second Edition. Boca Raton, FL: CRC Press; 2008:190.*

19.    The whey protein industry is a growing and extremely competitive business environment: "During the forecast period [of 2013-2018], [the market for] protein products is expected to grow by 62% to reach US$7.8 billion in 2018." *See* http://www.euromonitor.com/sports-nutrition-in-the-us/report.

20.    The wholesale price of whey protein is significantly higher than the wholesale price of free form amino acids and non-protein amino acids.

## II.    DEFENDANTS' FALSE PRODUCT CLAIMS AND "PROTEIN SPIKING" OF ITS NITRO-PRO PRODUCT

21.    Upon information and belief, Defendants market, advertise, distribute, and sell Muscleology's Nitro-Pro product throughout the State of Florida, in this District, and across the United States.

22.    In marketing and advertising the Nitro-Pro product to consumers, Defendants make the following claims on the Muscleology website concerning the protein content of the Nitro-Pro product:

    a.  "NITRO-PRO: Advanced Whey Protein Formula Naturally Sweetened with Stevia";

    b.  "NITRO-PRO only uses premium Whey Protein Isolate which is the highest quality and most superior protein source available, delivering 30g of great tasting muscle building protein in each serving";

    c.  "Ultra-Premium Protein Enriched with Digestive Enzymes …";

    d.  "30 grams of Ultra-Premium Muscle Building Protein Per Serving"; and

    e.  "NITRO-PRO™'S specialized formula has been designed to give you maximum results that any performance protein supplement can offer. GMP certified, Muscleology has taken the next step, providing a leading dose of 90 % premium whey protein isolate and 10% quality ion-exchanged whey protein concentrate with 30 grams per serving at only 139 calories!"

23.    Attached as Exhibit "1" is a true and correct copy of Muscleology's website pages advertising its Nitro-Pro product.

24.    The label on Muscleology's Nitro-Pro product represents that it contains "PREMUM WHEY ISOLATE PROTEIN" and that it contains 30 grams of protein per serving.  Under the heading "Ingredients," the label also represents that the Nitro-Pro Product contains "100% Patented Cold Filtered Whey Isolate, Ion-Exchange Whey Concentrate."

25.    The Nitro Pro product label is attached as Exhibit "2."

26.     Although Defendants claim that the Nitro-Pro product contains "advanced," "premium," "quality," or "ultra-premium" protein or protein formula, the Nitro-Pro product actually contains very little whey protein.

27.     The Nitro-Pro product also does not contain only 90% premium whey protein isolate, does not provide 30 grams of protein per serving, and does not contain 100% Patented Cold Filtered Whey Isolate, Ion-Exchange Whey Concentrate.

28.     In fact, laboratory tests performed on the Nitro-Pro product reveal that it contains only 7.96 grams of total Nitrogen, including Creatine Monohydrate and Taurine "Protein spiked amino acids." As a result, the consumer is left with a product that contains 73.47% less Nitrogen than advertised. Therefore, Nitro-Pro product contains only 7.53 grams of actual Protein . This amounts to 25.10% of the 30 grams claimed on the Nitro-Pro label. A true and correct copy of the laboratory test results are attached as "Exhibit 3."

29.     Thus, Defendants' claims regarding the protein quality and content of its Nitro-Pro product, as set forth herein, are false and misleading.

30.     Instead of including the quality and amount of whey protein advertised, Muscleology substitutes Taurine and Creatine, non-proteinogenic compounds.  As a result, nitrogen tests performed on Muscleology's Nitro-Pro product would misleadingly indicate that the product contains the superior protein content

represented when it does not, in fact, contain the amount of whole protein or quality ingredients advertised.

31.     Covertly substituting non-proteinogenic compounds and/or free-form amino acids for whey protein or other complete protein ingredients in a product is commonly referred to in the market as "protein-spiking," "nitrogen-spiking," or "amino-spiking."

32.     Upon information and belief, Muscleology "spiked" its Nitro-Pro product in order to reduce production costs, increase profit margins, and unfairly compete with High-Tech's NitroPro® product and brand.

33.     Additionally, in marketing and advertising the Nitro-Pro product to consumers, Defendants make the following claims on its website concerning the sodium content of the Nitro-Pro product:

   a.  "Low in Sodium";

   b.  "Lowest in Sodium – No Bloating or Water Retention NITRO-PRO can be used right up to a contest or photo shoot without having to worry about water retention and smoothing out. NITRO-PRO is extremely low in sodium containing only 10mg per (1 scoop) serving"; and

   c.  "Low in Sodium (Less than 10mg per serving) so ZERO Water Retention."

34.     The label on Muscleology's Nitro-Pro product also represents that the Nitro-Pro product contains "<10mg" of sodium per serving, "2%" of one's daily value based upon a 2,000 calorie diet.

35.     In fact, typical whey protein isolate contains 300mg-690mg per 100 gram serving. However, Defendants' Nitro-Pro product alleges to have "<10mg" of sodium per serving when whey protein would contain 135mg to 310 mg of sodium per 45 gram of sodium per serving depending on the manufacturer.

36.     Thus, Defendants' claims regarding the sodium content of its Nitro-Pro product, as set forth herein, are false and misleading.

37.     Defendants knew or should have known their claims regarding the protein and/or sodium content of the Nitro-Pro product are false and/or misleading.

38.     Upon information and belief, Defendant Hussain participated in, directed, controlled, caused, ratified, and/or was the moving force behind the selection and circulation of the false and/or misleading representations set forth herein.

39.     Upon information and belief, Defendants made the false and/or misleading representations set forth herein with the intention of deceiving customers and inducing said customers to rely upon said representations and purchase the Nitro-Pro product instead of Hi-Tech's product.

40.     Upon information and belief, the false and/or misleading representations set forth herein actually deceived, or had the tendency to deceive, a substantial portion of the targeted consumer base.

41.     Upon information and belief, consumers justifiably relied upon the false and/or misleading representations set forth herein when purchasing the Nitro-Pro product.

42.     Hi-Tech has suffered and continues to suffer harm as a consequence of Defendants' wrongful marketing conduct in promoting its Nitro-Pro product including, but not limited to, competitive harm, diverted or lost sales, and harm to the goodwill and reputation of Hi-Tech's NitroPro® trademark and brand.

### III.    DEFENDANTS' USE OF THE NITRO-PRO MARK DESPITE HI-TECH'S NITROPRO® TRADEMARK

43.     Plaintiff is the owner of United States Trademark Registration Number 4,064,443 for the famous and distinctive mark NitroPro® to identify its dietary supplement.  A true and correct copy of Plaintiff's registration is attached as part of Composite [1]"Exhibit 4."  A depiction of Plaintiff's product is attached as Exhibit "5."

44.     Plaintiff has used, and continues to use, in commerce in the United States, including in the State of Florida and in this District, the mark NitroPro® for its dietary supplement since at least as early as June of 2004.

45.     Since at least as early as June of 2004, Hi-Tech has continually marketed and sold its aforesaid product bearing the famous and distinctive NitroPro®

---

[1] The application was originally filed in the individual name of Jared Wheat.  It has since been assigned to the Plaintiff.

trademark, has conducted considerable promotion and advertising of goods using said trademark, and has made extensive and exclusive use of the trademark. These efforts have created a considerable amount of goodwill and favorable reputation in Plaintiff's NitroPro® trademark and brand, and caused said trademark associated with Hi-Tech's product to become famous throughout the United States.

46.    Hi-Tech's NitroPro® trademark is a famous, distinctive mark and has acquired substantial secondary meaning, and the public associates the NitroPro® trademark with Plaintiff Hi-Tech.

47.    Long subsequent to Plaintiff's adoption, use, and acquisition of secondary meaning in its NitroPro® trademark, and without Plaintiff's permission, Defendants adopted and began using the Nitro-Pro name in connection with a competing dietary supplement.

48.    The Nitro-Pro name used by Defendants is confusingly similar to Plaintiff's NitroPro® trademark in that the only difference between them is Defendants' inclusion of a "-" between the words "Nitro" and "Pro." Furthermore, the name "Nitro-Pro" appears in all capital letters across the label of Defendants' product ("NITRO-PRO"), as does Plaintiff's NitroPro® trademark across the label of its product ("NITROPRO"). Finally, Defendants adopted the colors orange and black for its logo and label, which is strikingly similar to the yellow and black used by Plaintiff on its product labels and marketing materials. See below for comparison:

49.    Consumers are confused and/or likely to be confused between Hi-Tech's NitroPro® trademark and brand and Muscleology's Nitro-Pro mark and brand.  See depictions below with Muscleology's infringing product on the left (and part of composite Exhibit "2") and Hi Tech's product on the right (and as Exhibit "5"):

 

50.    Consumers are confused and/or likely to be confused between Hi-Tech's NitroPro® product and Muscleology's Nitro-Pro product.

51.    Consumers are also confused and/or likely to be confused into associating Hi-Tech's NitroPro® trademark with Muscleology's Nitro-Pro product, an inferior protein supplement.

52.    Upon information and belief, Defendants were aware of Hi-Tech's NitroPro® trademark when they adopted and began using the Nitro-Pro product name, and did so with willful disregard for the rights of Hi-Tech and the intent to deceive and confuse consumers.

53.      Upon information and belief, Defendant Hussain participated in, directed, controlled, caused, ratified, and/or was the moving force behind the selection and circulation of the infringing Nitro-Pro mark.

## IV.    DEFENDANTS'      FRAUDULENT      CONDUCT      AND RACKETEERING ACTIVITIES

54.      Upon information and belief, Hussain operated and managed the affairs of Muscleology throughout all relevant times.

55.      Muscleology and Hussain knowingly engaged in a scheme to intentionally defraud Hi-Tech out of sales and profits though Muscleology's infringement of Hi-Tech's NitroPro® trademark.

56.      In intentional furtherance of this scheme, Muscleology used the Internet to disseminate Muscleology's infringing Nitro-Pro mark to consumers across the United States, and to enable consumers to purchase Muscleology's Nitro-Pro product online.

57.      In intentional furtherance of this scheme, Muscleology also used the U.S. Mail and/or other interstate carriers to ship Nitro-Pro, the product bearing the infringing mark, to purchasing consumers throughout the United States.

58.      Upon information and belief, Muscleology engaged in the fraudulent activities set forth in Paragraphs 56, 57, and 58 on a repeated and continuous basis

over the course of, at least, the past four (4) years. Muscleology continues to engage in said fraudulent activities to date.

59.     Defendant Hussain agreed with others associated with and employed by Muscleology to participate in and facilitate the fraudulent scheme set forth in Paragraphs 56, 57, and 58 and had actual knowledge of Muscleology's fraudulent activities set forth in Paragraphs 57 and 58.

60.     Defendants' infringement upon Hi-Tech's trademark and fraudulent activities described herein deceived consumers into believing Muscleology's Nitro-Pro product was the same or related to Hi-Tech's NitroPro® product, and caused and enabled consumers to purchase Muscleology's Nitro-Pro product instead of Hi-Tech's NitroPro® product.

61.     Muscleology and Hussain also knowingly engaged in a scheme to intentionally defraud Hi-Tech out of sales and profits though Muscleology's false product claims regarding Nitro-Pro's content, quality, characteristics, and/or ingredients.

62.     In intentional furtherance of this scheme, Muscleology used the Internet to disseminate its false product claims to consumers across the United States, and to enable consumers to purchase Muscleology's Nitro-Pro product online.

63.     In intentional furtherance of this scheme, Muscleology also used the U.S. Mail and/or other interstate carriers to ship Nitro-Pro, the subject of the false product claims, to consumers throughout the United States.

64.     Upon information and belief, Muscleology engaged in the fraudulent activities set forth above on a repeated and continuous basis over the course of, at least, the past four (4) years.  Muscleology continues to engage in said fraudulent activities to date.

65.     Defendant Hussain agreed with others associated with and employed by Muscleology to participate in and facilitate the fraudulent scheme set forth in Paragraph 55, and had actual knowledge of Muscleology's fraudulent activities set forth in Paragraphs 56, 57, and 58.

66.     Defendants' false product claims and fraudulent activities described herein deceived consumers as to the Nitro-Pro product's content, quality, characteristics, and/or ingredients, and caused and enabled consumers to purchase Muscleology's Nitro-Pro product instead of Hi-Tech's NitroPro® product.

67.     As a direct and proximate cause of Defendants' schemes and fraudulent activities set forth herein, Hi-Tech sustained injury to its business and property in the form of lost or diverted sales, competitive advantages, and goodwill in its NitroPro® trademark and brand.

## COUNT I

### False Advertising Under Lanham Act § 43(a), 15 U.S.C. § 1125(a)

### Against Muscleology and Hussain

68.     Plaintiff incorporates by reference Paragraphs 1 through 67 above as though fully set forth herein.

69.     Upon information and belief, Defendants have knowingly made and in interstate commerce and in this District, advertisements that contain false or misleading statements of fact regarding its Nitro-Pro product.  These advertisements contain actual and/or misleading statements including, but not limited to, the claims regarding Nitro-Pro's protein and sodium content.  Upon information and belief, Hussein personally authorized or directed these false and misleading statements,

70.     Upon information and belief, these false or misleading statements actually deceive, or have a tendency to deceive, a substantial segment of Plaintiff's customers, and this deception is material in that it is likely to influence the purchasing decisions of Plaintiff's customers.

71.     Defendants' false and misleading advertising statements violate the Lanham Act § 43(a), 15 U.S.C. § 1125(a).

72.     Defendants' actions have caused, and will continue to cause, harm to Plaintiff in the form of lost or diverted sales.

73.     Defendants have caused, and will continue to cause, immediate and irreparable injury to Plaintiff, including injury to its business, ability to compete, and goodwill in its NitroPro® trademark and brand for which there is no adequate remedy at law.  Plaintiff, therefore, is entitled to an injunction under 15 U.S.C. § 1116 restraining Defendants, their agents, employees, representatives, and all persons acting in concert with them from engaging in further actions of false advertising, and ordering removal of all Defendants' false advertisements.

74.     Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover from Defendants the damages sustained by Plaintiff as a result of Defendants' acts in violation of Lanham Act § 43(a).  Plaintiff is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of Defendants' acts.

75.     Pursuant to 15 U.S.C. § 1117, Plaintiff is further entitled to recover from Defendants the gains, profits, and advantages that they have obtained as a result of their acts.  Plaintiff is at present unable to ascertain the full extent of the monetary damages it has suffered by reason of Defendants' acts.

76.     Pursuant to 15 U.S.C. § 1117, Plaintiff is entitled to recover the costs of this action.   Additionally, upon information and belief, Plaintiff believes that Defendants' conduct was undertaken willfully and with the intention of causing confusion, mistake, or deception, entitling Plaintiff to recover additional damages and reasonable attorney fees.

## COUNT II

## Trademark Infringement under 15 U.S.C. §§ 1114 and 1125(a)

## Against Muscleology and Hussain

77.     Plaintiff incorporates by reference Paragraphs 1 through 76 above as though fully set forth herein.

78.     Hi-Tech's NitroPro® trademark, and the goodwill and brand of the business associated with it, are of great and incalculable value, are highly distinctive and arbitrary, and have become universally associated in the public mind with the products and services of the highest quality and reputation emanating from Plaintiff.

79.     Without Plaintiff's authorization or consent, and having knowledge of Plaintiff's well-known and prior rights in the NitroPro® trademark, Defendants advertised, marketed, and offered for sale and/or sold products in or affecting interstate commerce under the infringing Nitro-Pro name to the consuming public in direct competition with Plaintiff.

80.   Defendants used the name Nitro-Pro as set forth herein with the willful and deliberate intent to trade and capitalize on the goodwill and reputation generated by Plaintiff and symbolized by Plaintiff's NitroPro® trademark and brand.

81.   Defendants' use of the Nitro-Pro name on identical or substantially similar goods marketed and distributed by Defendants is likely to cause confusion, mistake, and deception of this behavior.

82.   Defendants' aforesaid activities constitute infringement of Plaintiff's federally registered trademark pursuant to 15 U.S.C. §§ 1114 and 1125(a).

82. The unlawful and willful conduct of the Defendants has caused and is causing Hi-Tech irreparable injury and monetary damages.

83.   The public in that the public is likely to believe that Defendants' product originates with or is sponsored by or in some other way connected with Plaintiff.   Upon information and belief, Hussein participated in all of the foregoing by authorizing or directing in

84.   Plaintiff is without remedy at law for its non-monetary damages, and Defendants' infringing activities will continue unless enjoined by this Court.

## COUNT III

**False Designation of Origin Under Lanham Act § 43(a), 15 U.S.C. § 1125(a)**

**Against Muscleology and Hussain**

85.   Plaintiff incorporates by reference Paragraphs 1 through 84 above as though fully set forth herein.

86.   Defendant's aforesaid activity constitutes introduction into commerce of a false designation of origin, or false description or representation of the origin

or sponsorship of its product in violation of 15 U.S.C. § 1125(a). Upon information and belief, Hussein authorized or directed or otherwise participated in this false designation of origin,

87.     The unlawful and willful conduct of the Defendant has caused and continues to cause Hi-Tech irreparable injury and monetary damages.

88.     Hi-Tech is without remedy at law for its non-monetary damages, and Defendant's activities will continue unless enjoined by this Court.

## <u>COUNT IV</u>

## Common Law Infringement and Unfair Competition under 15 USC § 1125(c)

## Against Muscleology

89.     Plaintiff incorporates by reference Paragraphs 1 through 88 above as though fully set forth herein.

90.     Hi-Tech owns and enjoys common law rights in its NitroPro® trademark, which rights are superior to any rights Defendant may claim.

91.     The sale by Defendant of its Nitro-Pro product constitutes unfair competition in violation of 15 U.S.C § 1125(c ) and is likely to cause confusion as to the source of origin of such product in that purchasers thereof will be likely to associate or have associated said product with Hi-Tech or as originating from Hi-Tech.

92.     Hi-Tech is without a remedy at law and Plaintiff's activities will continue unless enjoined by this Court.

## COUNT V

**Dilution of a Famous Mark Under Lanham Act § 43(c), 15 U.S.C. § 1125(c)**

**Against Muscleology and Hussain**

93.     Plaintiff incorporates by reference Paragraphs 1 through 92 above as though fully set forth herein.

94.     Plaintiff's NitroPro® trademark has acquired substantial secondary meaning, and the public associates said trademark and brand with Plaintiff. Accordingly, Plaintiff's NitroPro® trademark is a "famous mark" within the meaning of the Lanham Act § 43(c), 15 U.S.C. § 1125(c)(1), and has been a famous mark prior to Defendant's conduct as alleged herein.

95.     The actions of the Defendant, in using Hi-Tech's NitroPro® trademark in connection with the Defendant's advertising and conduct described herein, causes dilution to the distinctiveness of Hi-Tech's trademark in violation of 15 U.S.C. § 1125(c).

96.     The actions of the Defendant, in using Hi-Tech's NitroPro® trademark in connection with the Defendant's advertising and conduct described herein, harms the reputation of Hi-Tech's trademark in violation of 15 U.S.C. § 1125(c).

97.     The aforesaid conduct of the Defendant was and is performed with the deliberate and willful intent to trade off the goodwill and reputation built in Hi-Tech's NitroPro® trademark and brand and to cause dilution of Hi-Tech's trademark in violation of 15 U.S.C. § 1125(c).

98.     The unlawful and willful conduct of the Defendant has caused and is causing Hi-Tech irreparable injury and monetary damages.

99.     Hi-Tech is without remedy at law for its non-monetary damages, and Defendant's activities will continue unless enjoined by this Court.

## COUNT VI

**Violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes §§ 501.201, *et seq*. Against Muscleology**

100.    Plaintiff incorporates by reference Paragraphs 1 through 99 above as though fully set forth herein.

101.    Plaintiff brings this action to secure relief from the unlawful, deceptive, and unfair trade practices perpetrated by Defendant.

102.    Plaintiff and Defendant are commercial competitors.  Plaintiff's actions as described above constitute deceptive and unfair trade practices in violation of Fla. Stat. §§ 501.203(3)(a)-(c) and 501.204.

103.    The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Florida Statutes § 502.201 et seq., was enacted to protect the public and legitimate

business enterprises from those who engage in unfair methods of competition and unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.

104.   Defendant's affirmative actions, as alleged herein, constitute unconscionable commercial practices, deception, fraud, false pretense, false promise, and/or misrepresentation.   Such actions and omissions are unlawful under the FDUPTA.

105.   Upon information and belief, consumers reasonably and justifiably relied on Defendant's deceptive, unfair, and fraudulent misrepresentations as alleged herein.  Consumers were certain to be deceived because Defendant knowingly failed to disclose the source, affiliation, origin, characteristics, ingredients, standards and/or quality of its Nitro-Pro product.  Defendant's business practices, in the advertising, marketing, packaging, labeling, and sale of its Nitro-Pro product as a unique and superior product, justify selection of the product over alternative dietary supplements.

106.   As a direct and proximate result of Defendant's unlawful acts and omissions, Plaintiff has suffered an ascertainable loss of money or property in the form of diverted or lost sales.

107.   Defendant is without remedy at law and Defendant's deceptive trade practices as set forth herein continue, and will continue, unless enjoined by this Court.

108.    Plaintiff is entitled to equitable and injunctive relief, costs, and reasonable attorney fees.

## COUNT VIII

### Florida Unfair Competition Against Muscleology

109.    Plaintiff incorporates by reference Paragraphs 1 through 108 above as though fully set forth herein.

110.    Defendant's actions, as set forth above, constitute Florida unfair competition in violation of the common law of the State of Florida.

111.    Defendant's actions as described herein have caused and will continue to cause irreparable injury to Hi-Tech and, unless restrained, will continue to do so.

112.    As a direct and proximate result of Defendant's conduct, Hi-Tech has suffered damages in an amount to be determined at trial.

113.    Hi-Tech is without remedy at law, and Defendant's activities will continue unless enjoined by this Court.

## COUNT IV

### Florida Common Law Trademark Infringement Against Muscleology

114.    Plaintiff incorporates by reference Paragraphs 1 through 113 above as though fully set forth herein.

115.    Defendant's acts, as alleged herein, constitute trademark infringement of Hi-Tech's NitroPro® trademark and passing off in violation of the common law of the State of Florida.

116.    Defendant's acts of trademark infringement constitute intentional misconduct and/or gross negligence within the meaning of Fla. Stat. § 768.72(2)(a)-(b), entitling Hi-Tech to both compensatory damages in an amount to be determined at trial, but in no event less than $75,000.00, and punitive damages under the common law and Fla. Stat. § 768.72.

117.    Hi-Tech is without remedy at law, and Defendant's activities will continue unless enjoined by this Court.

## COUNT IX

### Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d) Against Muscleology and Hussain

118.    Plaintiff incorporates by reference Paragraphs 1 through 117 as if fully set forth herein.

119.    As set forth herein, Defendants agreed and conspired to violate 18 U.S.C. § 1962(c).   Specifically, Defendants conspired to conduct the affairs of Muscleology, the enterprise, through a pattern of racketeering activity as part of their scheme to engage in false advertising regarding the protein and sodium content of Muscleology's Nitro-Pro product, defrauding Hi-Tech of sales and profits.

120.    In furtherance of this scheme to engage in false advertising, Defendants agreed to, and did, use the internet to disseminate its false product claims to consumers across the United States, and used the Internet to enable consumers to purchase Muscleology's Nitro-Pro product online in violation of 18 U.S.C. § 1343.

121.    Also in furtherance of this scheme to engage in false advertising, Defendants agreed to, and did, use the U.S. Mail and/or other interstate carriers to ship Nitro-Pro, the subject of the false product claims, to consumers throughout the United States in violation of 18 U.S.C. § 1341.

122.    As set forth herein, Defendants agreed and conspired to violate 18 U.S.C. § 1962(c).  Specifically, Defendants conspired to conduct the affairs of Muscleology, the enterprise, through a pattern of racketeering activity as part of their scheme to unlawfully infringe upon Hi-Tech's NitroPro® trademark.

123.    In furtherance of this scheme to unlawfully infringe upon Hi-Tech's NitroPro® trademark, Defendants agreed to, and did, use the internet to disseminate its Muscleology's infringing Nitro-Pro mark to consumers across the United States, and used the Internet to enable consumers to purchase Muscleology's Nitro-Pro product online in violation of 18 U.S.C. § 1343.

124.    Also in furtherance of this scheme to unlawfully infringe upon Hi-Tech's NitroPro® trademark, Defendants agreed to, and did, use the U.S. Mail and/or

other interstate carriers to ship Nitro-Pro, the product bearing the infringing mark, to consumers throughout the United States in violation of 18 U.S.C. § 1341.

125.    Defendants have intentionally conspired to conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described above.   That conduct constitutes conspiracy to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

126.    As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiff has been injured in its business and property by lost or diverted sales and by injury to its business, the reputation and goodwill of its NitroPro trademark, and its ability to compete in the marketplace.

127.    As a result of the Defendants' violations of 18 U.S.C. § 1962(d), Plaintiff is entitled to actual damages, treble damages, costs, and attorney fees.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1.    For preliminary and permanent injunctive relief prohibiting Defendants, their agents, or anyone working for, in concert with or on behalf of Defendants from engaging in false or misleading advertising with respect to the Nitro-Pro product

and/or violating Lanham Act § 43(a), which relief includes, but is not limited to, removal of all labels or misleading advertisements and corrective advertising to remedy the effects of Defendants' false advertising.

2.      For an order requiring Defendants to correct any erroneous impressions persons may have derived concerning the nature, characteristics, or qualities of its Nitro-Pro product, including without limitation, the placement of corrective advertising and providing written notice to the public.

3.      That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Plaintiff by using false, deceptive or misleading statements of fact that misrepresent the nature, quality, and characteristics of the Nitro-Pro product.

4.      That Plaintiff be awarded damages Plaintiff has sustained as a consequence of Defendants' conduct.

5.      That Plaintiff be awarded Defendants' profits obtained by Defendants as a consequence of Defendants' conduct.

6.      That such damages and profits be trebled and awarded to Plaintiff as a result of Defendants' willful, intentional and deliberate acts in violation of the Lanham Act § 43(a).

7.      That all of Defendants' misleading and deceptive materials and products be destroyed as allowed under 15 U.S.C. § 1118.

8.     That the Court adjudge and decree that Hi-Tech is the exclusive owner of the trademark NitroPro® associated with dietary supplement products.

9.     That the Court adjudge and decree that the conduct of the Defendants infringes upon Plaintiff's trademark rights in violation of 15 U.S.C. §§ 1114 and 1125.

10.    That the Court adjudge and decree that the conduct of Defendants constitutes dilution of Hi-Tech's famous trademark in violation of 15 U.S.C. § 1125(c).

11.    For preliminary and permanent injunctive relief prohibiting Defendants, their agents, or anyone working for, in concert with or on behalf of Defendants from using the Nitro-Pro name or logo, or any other term, trade name, trade dress, trademark, or service mark confusingly similar to Plaintiff's NitroPro® trademark in connection with Defendants' products, including any packaging and promotional materials therefor.

12.    For an order requiring Defendants to deliver up for destruction all tangible items bearing the Nitro-Pro name, including without limitation, the following: labels, packaging, brochures, flyers, advertisements, and signs (and to recall for such purpose any such products and materials in the possession, custody, or control of any other person or entity) and to remove any references to the Nitro-Pro name from the Internet.

13.     That Defendant be adjudged to have unlawfully and unfairly competed against Plaintiff under the laws of the State of Florida, §§ 501.201, *et seq*.

14.     That Plaintiff recover actual damages, treble damages, costs, and attorney fees for Defendants' violation of 18 U.S.C. § 1962(d).

15.     That Plaintiff recover punitive damages as provided by law.

16.     That Plaintiff recover its costs and reasonable attorney fees.

17.     That Plaintiff be granted prejudgment and post judgment interest.

18.     That Plaintiff have such other and further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and all applicable law, Plaintiff requests a trial by jury on all issues so triable.

Dated: FEBRUARY 6th, 2015

Respectfully Submitted

_____/ews/_____
Erica W. Stump, Esq.
Erica W. Stump, P.A.
110 E. Broward Blvd., Suite 1700
Fort Lauderdale, FL 33301
Florida Bar No 0427632
(786)506-1088
Fax (954)2788510
erica@ericawstump.com

Edmund J. Novotny, Jr.

Georgia Bar No. 547338
(motion for pro hac vice to be filed)
*Counsel    for    Plaintiff    Hi-Tech*
*Pharmaceuticals, Inc*

101 Marietta Street
Suite 3100

Atlanta, Georgia 30303

Tel:404-979-3150

Fax: 404-979-3170

ednovotny@novotnylawgroup.com